**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **O. JOHN BENISEK** *et al..*, | * | |
| Plaintiffs | * | |
| v. | * | CIVIL NO. JKB-13-3233 |
| **LINDA H. LAMONE** *et al..*, | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

This case challenges the 2011 redistricting of Maryland's congressional districts. It was assigned to a three-judge court, of which the undersigned is a member and for which the undersigned has been designated to handle "all preliminary matters, including scheduling and oversight of discovery," subject to review by the full court. (Sched. Ord. 1, Nov. 16, 2016, ECF No. 108.) An order was entered on November 16, 2016, setting a schedule for discovery, including the date of February 10, 2017, for completion of all fact discovery. (*Id.*)

Now pending before the Court are two ripe motions related to discovery:

- Plaintiffs' Motion to Compel Non-Parties Jeanne D. Hitchcock, Thomas V. "Mike" Miller Jr., Michael E. Busch, and Richard Stewart to Testify at Deposition, and to Compel Non-Parties Thomas V. "Mike" Miller Jr., Michael E. Busch, and Richard S. Madaleno Jr. to Produce Documents (ECF No. 111), and

- Non-Parties' Motion for Protective Order and to Quash Non-Party Deposition Subpoenas Served on Thomas V. Mike Miller, Jr., Michael E. Busch, Jeanne Hitchcock, and Richard Stewart (ECF Nos. 112 & 114).

Each of these two motions is effectively the mirror image of the other motion. Accordingly, they will be analyzed as one. Both motions have been briefed (ECF Nos. 119, 120, 123, & 124), and no hearing is required, Local Rule 105.6 (D. Md. 2016). Plaintiffs' motion will be granted, and the Non-Parties' motion will be denied.

I.

This memorandum will not repeat all that was said by the Court in its majority opinion when it denied Defendants' motion to dismiss for failure to state a claim for relief. (Op. Aug. 24, 2016, ECF No. 88.) In short, the Court determined the second amended complaint states a claim of violation of Plaintiffs' First Amendment rights by alleging that the 2011 redistricting was undertaken, as to the former Sixth Congressional District, purposefully to dilute the weight of Republicans' votes based upon their voting histories and their party affiliation and that it achieved that purpose. (Op. 38-39.) Applying established principles of First Amendment retaliation cases, the Court distilled the three elements that Plaintiffs will be called upon to prove in this case:

1. Intent – Those responsible for the redistricting map redrew the lines of the Sixth District with the specific intent to impose a burden on Plaintiffs and similarly situated voters because of how they voted or the political party with which they were affiliated.

2. Injury – The burden imposed on Plaintiffs was dilution of their votes to such a degree that it yielded a tangible and concrete adverse effect.

3. Causation – The redistricting of the Sixth District would not have resulted in an adverse effect to Plaintiffs but for the officials' retaliatory motive, that is, to burden Plaintiffs and similarly situated voters by reason of their views.

(Op. 31-32.)

II.

It is the first element of specific intent that underlies Plaintiffs' efforts to obtain deposition testimony and/or production of documents from the Non-Parties. In turn, the Non-Parties have resisted Plaintiffs' attempts to delve into the intent of those individuals drawing the contested redistricting map and those legislators ratifying that map, and they have claimed they are justified in doing so because they enjoy legislative privilege. After considering all of the parties' arguments, the Court concludes the legislative privilege claimed by the Non-Parties must yield to the discovery requests of Plaintiffs.

In analyzing the claim of legislative privilege, the Court endorses and relies upon the five-factor analysis employed in a redistricting case in the Eastern District of Virginia, *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323 (E.D. Va. 2015) (three-judge court). Recognizing state legislative privilege as a creature of federal common law, *Bethune-Hill* nevertheless noted that the privilege "may become qualified based on the nature of the claim at issue." *Id.* at 334. Thus, unlike lawsuits seeking to hold individual legislators liable, "where the State faces liability, the legislative privilege becomes qualified when it stands as a barrier to the vindication of important federal interests and insulates against effective redress of public rights." *Id.* A redistricting case such as that now before the Court is a "particularly appropriate circumstance" for qualifying the privilege claimed by state legislators since "judicial inquiry into legislative intent is specifically contemplated as part of the resolution of the core issue" in the case. *Id.* at 337.

The five factors examined in the analysis of qualified state legislative privilege are (1) relevance of the evidence sought, (2) availability of other evidence, (3) the seriousness of the

litigation and the issues involved, (4) the role of the State in the case, and (5) the purposes of the privilege. *Id.* at 339-42.

The first factor is relevance of the evidence sought. Assuming *arguendo* that all of the Non-Parties are entitled to invoke the federal common-law legislative privilege accorded to state legislative officials, the Court cannot endorse the Non-Parties' claim of that privilege to bar essential discovery of evidence that lies at the heart of this case. As previously indicated, Plaintiffs are called upon to prove the Sixth District map was redrawn by state officials who had the specific intent to dilute the votes of Republican voters in that district based upon their voting history or their party affiliation. The Non-Parties' intent, therefore, is at issue and this factor weighs in favor of Plaintiffs.

The Court gives no weight to the Non-Parties' contention that the Court's earlier opinion purportedly prohibited Plaintiffs from using "subjective evidence," which the Non-Parties apparently define as evidence of their subjective intent. (*See* Non-Parties' Opp'n to Pls.' Mot. Compel 9, 12.) Their contention is a distortion of what the opinion actually said, which was, "a plaintiff must rely on objective evidence to prove that, in redrawing a district's boundaries, the legislature and its mapmakers were motivated by a specific intent to burden the supporters of a particular political party." (Op. 33.) Objective evidence, in the form of testimony and documents, that goes to prove the Non-Parties "were motivated by a specific intent to burden the supporters of a particular political party" is not somehow transformed into "subjective evidence" merely by the inclusion of some subjective perceptions of a given witness. "Objective evidence" often has bits embedded within it that are themselves subjective perceptions or experiences. This contention of the Non-Parties is meritless.

The second factor is availability of other evidence.  The Non-Parties argue that Plaintiffs have all the evidence they need on the question of specific intent, pointing to Maryland Public Information Act requests, recording of legislator statements, transcripts of public hearings conducted by the Governor's Redistricting Advisory Committee ("GRAC"), maps, election and voter data, bill files, and draft maps considered by the GRAC.  Although those materials may be probative in part on the issue of specific intent, they provide no meaningful substitute for the direct evidence of the mapmakers' intent.  This factor also weighs in Plaintiffs' favor.

The third factor relates to the seriousness of the litigation and the issues involved.  The Non-Parties acknowledge the serious quality of the instant litigation, which challenges as unconstitutional the method by which voters select their congressional representatives.  Even so, they fault Plaintiffs for not bringing the Non-Parties' intent into issue sooner, although they fail to explain what difference the timing makes in assessing seriousness of the issues.  The Court finds no significant question as to the seriousness of both the litigation and the issues involved.  This factor favors the Plaintiffs.

The fourth factor focuses on the role of the State of Maryland in the case.  As earlier indicated, this suit is not brought against individual state legislators.  Instead, it is brought against those who are responsible for the electoral process in Maryland, seeking to enjoin them from administering, preparing for, or permitting the nomination or election of congressional representatives from certain districts.[1]  The electoral process is a product of Maryland's legislature, which prescribes the laws incorporating the challenged redistricting.  As was true in *Bethune-Hill*, the legislature's decision-making process lies at the core of Plaintiffs' case, and the legislature's direct role in the precipitating events of the instant litigation supports overcoming

---

[1] The Second Amended Complaint included the Sixth, Seventh, and Eighth Congressional Districts in its prayer for relief (ECF No. 44), but is clearly focused on the Sixth District.  Subsequent proceedings have also focused only on the Sixth District.

the legislative privilege.  114 F. Supp. 3d at 341 (citing *Favors v. Cuomo*, 285 F.R.D. 187, 220 (E.D.N.Y. 2012)).

The fifth factor examines the purposes of the state legislative privilege, which derives from state legislative immunity.  *Id.* at 331-34.  State legislators may broadly claim immunity "from . . . civil process for what they do or say in legislative proceedings."  *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951).  *See also EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011) ("Legislative privilege against compulsory evidentiary process exists to safeguard this legislative immunity and to further encourage the republican values it promotes.").  The privilege applies whether or not the legislators themselves have been sued.  *Id.* However, every testimonial exclusionary privilege "contravene[s] the fundamental principle that the public . . . has a right to every man's evidence."  *Trammel v. United States*, 445 U.S. 40, 50 (1980) (internal quotation marks omitted).  For that reason, any privilege "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth."  *Id.* (internal quotation marks omitted).

In comparing the state legislative privilege with the federal legislative immunity enshrined in the Speech or Debate Clause, U.S. Const., art. I, § 6, cl. 1, the Supreme Court has noted that the federal legislative privilege has two underlying rationales:  one, to avoid unnecessary intrusion by one coequal branch of government into another and, two, to protect legislative independence.  *United States v. Gillock*, 445 U.S. 360, 369 (1980).  The first rationale rests upon the doctrine of separation of powers, which has no application to a claim of state legislative privilege in federal court litigation.  *Id.* at 370.  The second rationale, to protect legislative independence, is rooted in a desire to avoid disruption of the state legislative process.

6

*Id.* at 371. The *Gillock* Court noted, though, that *Tenney*'s upholding of a state legislator's absolute common-law immunity from suit was founded upon the circumstances of state legislators being sued under 42 U.S.C. § 1983 by an individual seeking damages; those circumstances qualified the breadth of *Tenney*'s holding, in the *Gillock* Court's view. *Gillock*, 445 U.S. at 372. The absence of the threat of personal monetary liability reduces significantly, and perhaps even eliminates, the justification for state legislative immunity. *Owen v. City of Independence*, 445 U.S. 622, 655-56 (1980).

Moreover, "where important federal interests are at stake," the principle of comity, which undergirds the protection of legislative independence, yields. *Gillock*, 445 U.S. at 373. *See also Bethune-Hill*, 114 F. Supp. 3d at 333. Those "important federal interests" are present in the case now before this Court. Although the Non-Parties' compliance with the subpoenas served upon them may involve some inconvenience, the Court concludes such inconvenience to be minor in comparison to the weight of the litigation, which seeks to vindicate fundamental constitutional rights; alone, inconvenience is not a compelling reason to quash the subpoenas. The Non-Parties' invocation of legislative privilege is without merit.

III.

For the reasons previously stated herein, the Court GRANTS Plaintiffs' motion to compel (ECF No. 111) and DENIES the Non-Parties' motion for protective order and to quash subpoenas (ECF Nos. 112 & 114).

DATED this 31st day of January, 2017.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge